*Before the*
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| Consumers' Research, et al. ) | |
| ) | |
| v. ) | |
| ) | No. 25-60535 |
| Federal Communications Commission ) | |
| and the ) | |
| United States of America ) | |

**REPLY TO OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**

Movant-Intervenors Benton Institute for Broadband & Society (Benton), the National Digital Inclusion Alliance (NDIA) and the Center for Media Justice dba MediaJustice (MediaJustice)(collectively Movants), respectfully submit this response to Petitioners' November 6, 2025 Opposition to Motions to Intervene (Opposition).

Petitioners' submission is characterized by addressing arguments Movants did not make and largely failing to address the most salient points that Movants did present. Most notably, it fails to rebut Movants' argument that because the Hobbs Act specifically provides the framework for intervention in cases brought thereunder, intervention here is properly assessed without reference to Rule 24(a)(2) of the Federal Rules of Civil Procedure (Rule 24(a)(2)). And, even if this Court were to look to Rule 24(a)(2), Petitioners fall far short of rebutting Movants' demonstration that they fully meet the test for intervention set out in this

Court's case law for non-Hobbs Act cases.

### The Hobbs Act Provides the Criteria To Assess
### Interventon Without Reference to Rule 24(a)(2)

In seeking intervention, Movants showed that the intervention provision in the Hobbs Act, U.S.C. §2348, provides sufficient standards to evaluate intervention motions sought thereunder. They pointed out that "the Hobbs Act stands in distinction from other provisions of the U.S. Code that allow for direct review of agency actions in the Courts of Appeal but do not establish any standard for qualification for intervention." Benton, *et al.*, Motion for Leave to Intervene (October 30, 2025)(Motion) at 5.

Petitioners' Opposition simply does not engage on this central premise. They rely upon *Texas v. U.S. Dept. of Energy*, 754 F.2d 550, 551 (5th Cir. 1985)(*Texas*) cited by Judge Wilson in denying intervention in No. 22-60525. (22-60525 *Order*) But, as Movants explained in their Motion at 7-8, Judge Wilson ruled on the unopposed motion in No. 22-6025 without having been presented with the opportunity to consider the distinction between Hobbs Act cases and those that are brought pursuant to other statutes lacking the criteria contained in U.S.C. §2348. In the current motion, Movants have explained their position at greater length and, in particular, distinguished *Texas* from this and other cases brought under the Hobbs Act. As Movants pointed out, *Texas* came to

this Court under the Nuclear Waste Policy Act of 1982, 42 U.S.C. §§10101 *et seq.,* not the Hobbs Act. Movants explained that, "[l]ike many other statutes that provide for direct review in the Courts of Appeal, that statute does not refer at all to intervention on appeal. See 42 U.S.C. §10139." Motion at 7. In response, Petitioners nonetheless again place exclusive reliance - without further explanation - on *Texas*, and make no effort to address the fact that it did not arise under the Hobbs Act.[1] Indeed, and quite tellingly, they cite to no Hobbs Act cases at all with respect to standards for intervention.

The only other authority Petitioners invoke in support of their claim that the Hobbs Act does not fully control intervention under Section 2348 is this Court's Local Rule 15.3.3(b). But that provision is even less apposite than *Texas*. Understandably, Judge Wilson did not invoke Local Rule 15.3.3(b) because it is a special one-off provision that establishes procedures for administration of cases seeking review of decisions of the Federal Energy Regulatory Commission (FERC) and has no relevance to review of actions of the FCC or any other agency.

---

[1] Movants elsewhere in the Opposition cite a Hobbs Act case, *Alabama Power Co. v. FCC*, 311 F.3d 1357, 1366 (11th Cir. 2002) for the undisputed proposition that intervention under the Hobbs Act is discretionary where the proposed intervenors that had not been parties to the proceeding for which review is sought. Opposition at 8. That is why Movants have sought leave to intervene, and did not seek intervention as of right. In fact, the language Petitioners quote does not even involve intervention; it was an aside in the context of discussing criterial for filing petitions for review.

Judge Wilson did not question Movants' standing in his October 30, 2023 Number 22-60525 *Order*. But after bringing cookie-cutter challenges in every calendar quarter since 4Q2021 without ever questioning Movants' standing, Petitioners now half-heartedly suggest for the first time that "there are serious questions whether Movants must demonstrate standing under the Hobbs Act." Opposition at 9. That indirect challenge lacks any basis in fact or law. Movants' motion fully explained the injuries they would incur, and that denial of the petition for review would alleviate those harms. One need go no further than the fact that Petitioners' principal prayer for relief is that the Universal Service Fund (USF) contribution factor be set to zero. Petition for Review at 2.[2] Elimination of all funding from USF programs, even temporarily, would materially interfere with each Movants' core missions, which are, essentially, to expand connectivity and access to broadband. Motion at 2-5. And if the structure or operations of the Universal Service Administrative Company (USAC) were changed, see Petition for Review at 5, or if USAC were abolished, *id.,* whatever the FCC might do to replace those functions would unquestionably force Movants to incur substantial

---

[2] "The Commission should set the Fourth Quarter 2025 Contribution Factor at 0.000 or reduce the Factor by the amount accounted for by any unlawful portions." Comments and Objections of Consumers' Research, et al., Docket 96-45 (September 15, 2025) at 1, available at https://www.fcc.gov/ecfs/document/109151374503934/1

costs in adjusting to some new hypothetical regime. And dismissal of the petition for review would unquestionably redress all those harms. That Movants' petition for a writ of certiorari in *FCC v. Consumers Research*, 145 S.Ct. 2482 (2025), was granted, presumably after that Court's rigorous vetting process discussed infra, is also supportive of their standing.

Nor is it the case that, where intervention is in support of government respondents and a movant has demonstrated an interest in the case, that a full standing inquiry is even needed:

> "Article III does not require intervenors to independently possess standing" when a party already in the lawsuit has standing and seeks the same "ultimate relief" as the intervenor. *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998)

*Texas v. United States*, 945 F.3d 355, 377 (5th Cir. 2019), *rev'd on other grounds, California v. Texas*. 593 U.S. 659 (2021). *See also, Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)("Under our precedents, at least one party must demonstrate Article III standing for each claim for relief.")

### Even if Rule 24(a)(2) Standards Were Applicable, Movants' Easily Pass That Test for Intervention.

Petitioners fare no better in disputing Movants' alternative argument that, even if this Court were to import Rule 24(a)(2) considerations into Hobbs Act interventions, Movants easily pass the "minimal" bar to such intervention. *Sierra*

*Club v. Espy*, 18 F.3d 1202, 1207)(5th Cir. 1994).[3] The motion is timely, and Movants have shown that they are "interested parties," and, notwithstanding Judge Wilson's prior finding, the governmental parties do not adequately represent Movants' interests. Motion at 12-14.[4]

Judge Wilson's brief determination with respect to Movants' intervention in No. 22-60525 was based on his finding that they had failed to show "'adversity of interest, the representative's collusion with the opposing party or nonfeasance by the representative.'" Order at 2 (quoting *Texas* at 553). "Collusion" and "nonfeasance" are not at issue here. As to "adversity of interest." Movants have made a much more robust showing based in part on the changed circumstance of the additional issues raised in the current proceeding that were not presented in No. 22-6025, and thus were not before Judge Wilson at the time of his order. Cite.

It is not daunting to show inadequacy of representation. *Sierra Club*, *supra*. :"Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). And Movants need not demonstrate that "representation by existing parties will be, for certain, inadequate." " *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015)(quoting *Trbovich v. United Mine Workers of America*, 404 U.S.

---

[3]"The applicant need only show that representation 'may be' inadequate." *Id*.

[4]To the extent there might be concern about muliplicity of parties, Movants expect to collaborate on briefing with other Intervenors if possible.

528, 538 n.10 (1972)). As set out the Motion at 14, Movants' interests "complement, but are different from, the interests of the government Respondents," which would be met by preserving the status quo as to USF services, whereas Movants seek to fund additional new USF services. And, as Movants also explained, at 15, "Movants have a powerful interest in maintaining the current structure of USAC and its governance...," while the Respondents' could respond to an adverse decision by handing USF management to a different body.

Petitioners trivialize the significance of the grant of certiorari and permitting divided argument in *FCC v. Consumers Research*. Opposition at 6. It is certainly true that, as Petitioners say, "[d]ecisions about oral argument time are not determinative of inadequate representation." *Id.* But it is unquestionably indicative of a finding that, at the least, the parties sharing time have different things to say, since Supreme Court Rule 28.4 expressly states that "Divided argument is disfavored." Moreover, the Supreme Court not only rejected Petitioners' request to hold Movants' petition for a writ of certiorari, but it then granted the petition received full merits briefing. Motion at 11.

In treating the decisions to grant certiorari and to permit divided argument as having little or no significance, Petitioners also ignore that such actions are quite deliberate; the Supreme Court does not lightly grant certiorari. Indeed,

Movants' certiorari petition was granted only after it was relisted for a second conference. As the definitive supreme court practice treatise explains,

> [W]hen the Court is presented in conference with a certiorari petition that appears to raise a question warranting review, instead of taking formal action on the petition the Court often relists it for further consideration, typically at the next conference. In the interim the Justices and their law clerks study the case to ensure that it is an appropriate vehicle to resolve the certworthy question

Shapiro *et al.*, Supreme Court Practice, ch. 5, §5.2 (11th ed. 2019)(ebook).

## CONCLUSION

Accordingly, Benton, NDIA and MediaJustice respectfully request that the Court grant leave to intervene in support of Respondents FCC and the United States, and grant all such other relief as may be just and proper.

Respectfully submitted,

/s/ Andrew Jay Schwartzman

Andrew Jay Schwartzman
525 Ninth Street, NW
Seventh Floor
Washington, DC 20004
(202) 241-2408
AndySchwartzman@gmail.com

November 13, 2025

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with [the type-volume limit of FED. R. APP. P. 28(d)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f):

    **X**     this document contains **1744** words, **or**

    ☐     this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

    **X**     this document has been prepared in a proportionally spaced typeface using WordPerfect 2021 in 14 point Times Roman, or

    ☐     this document has been prepared in a monospaced typeface using _____ with _____.

> /s/ Andrew Jay Schwartzman
>
> Attorney for Benton Institute for Broadband & Society, National Digital Inclusion Alliance and Media Justice.

November 13, 2025

*Before the*
# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | |
|---|---|
| Consumers' Research, et al. | ) |
| | ) |
| v. | ) |
| | ) No. 25-60535 |
| Federal Communications Commission | ) |
| and the | ) |
| United States of America | ) |

**REPLY TO OPPOSITION TO MOTION FOR LEAVE TO INTERVENE**

Movant-Intervenors Benton Institute for Broadband & Society (Benton), the National Digital Inclusion Alliance (NDIA) and the Center for Media Justice dba MediaJustice (MediaJustice)(collectively Movants), respectfully submit this response to Petitioners' November 6, 2025 Opposition to Motions to Intervene (Opposition).

Petitioners' submission is characterized by addressing arguments Movants did not make and largely failing to address the most salient points that Movants did present. Most notably, it fails to rebut Movants' argument that because the Hobbs Act specifically provides the framework for intervention in cases brought thereunder, intervention here is properly assessed without reference to Rule 24(a)(2) of the Federal Rules of Civil Procedure (Rule 24(a)(2)). And, even if this Court were to look to Rule 24(a)(2), Petitioners fall far short of rebutting Movants' demonstration that they fully meet the test for intervention set out in this

Court's case law for non-Hobbs Act cases.

### The Hobbs Act Provides the Criteria To Assess Interventon Without Reference to Rule 24(a)(2)

In seeking intervention, Movants showed that the intervention provision in the Hobbs Act, U.S.C. §2348, provides sufficient standards to evaluate intervention motions sought thereunder. They pointed out that "the Hobbs Act stands in distinction from other provisions of the U.S. Code that allow for direct review of agency actions in the Courts of Appeal but do not establish any standard for qualification for intervention." Benton, *et al.*, Motion for Leave to Intervene (October 30, 2025)(Motion) at 5.

Petitioners' Opposition simply does not engage on this central premise. They rely upon *Texas v. U.S. Dept. of Energy*, 754 F.2d 550, 551 (5th Cir. 1985)(*Texas*) cited by Judge Wilson in denying intervention in No. 22-60525. (22-60525 *Order*) But, as Movants explained in their Motion at 7-8, Judge Wilson ruled on the unopposed motion in No. 22-6025 without having been presented with the opportunity to consider the distinction between Hobbs Act cases and those that are brought pursuant to other statutes lacking the criteria contained in U.S.C. §2348. In the current motion, Movants have explained their position at greater length and, in particular, distinguished *Texas* from this and other cases brought under the Hobbs Act. As Movants pointed out, *Texas* came to

this Court under the Nuclear Waste Policy Act of 1982, 42 U.S.C. §§10101 *et seq.*, not the Hobbs Act. Movants explained that, "[l]ike many other statutes that provide for direct review in the Courts of Appeal, that statute does not refer at all to intervention on appeal. See 42 U.S.C. §10139." Motion at 7. In response, Petitioners nonetheless again place exclusive reliance - without further explanation - on *Texas*, and make no effort to address the fact that it did not arise under the Hobbs Act.[1] Indeed, and quite tellingly, they cite to no Hobbs Act cases at all with respect to standards for intervention.

The only other authority Petitioners invoke in support of their claim that the Hobbs Act does not fully control intervention under Section 2348 is this Court's Local Rule 15.3.3(b). But that provision is even less apposite than *Texas*. Understandably, Judge Wilson did not invoke Local Rule 15.3.3(b) because it is a special one-off provision that establishes procedures for administration of cases seeking review of decisions of the Federal Energy Regulatory Commission (FERC) and has no relevance to review of actions of the FCC or any other agency.

---

[1]Movants elsewhere in the Opposition cite a Hobbs Act case, *Alabama Power Co. v. FCC*, 311 F.3d 1357, 1366 (11th Cir. 2002) for the undisputed proposition that intervention under the Hobbs Act is discretionary where the proposed intervenors that had not been parties to the proceeding for which review is sought. Opposition at 8. That is why Movants have sought leave to intervene, and did not seek intervention as of right. In fact, the language Petitioners quote does not even involve intervention; it was an aside in the context of discussing criterial for filing petitions for review.

Judge Wilson did not question Movants' standing in his October 30, 2023 Number 22-60525 *Order*. But after bringing cookie-cutter challenges in every calendar quarter since 4Q2021 without ever questioning Movants' standing, Petitioners now half-heartedly suggest for the first time that "there are serious questions whether Movants must demonstrate standing under the Hobbs Act." Opposition at 9. That indirect challenge lacks any basis in fact or law. Movants' motion fully explained the injuries they would incur, and that denial of the petition for review would alleviate those harms. One need go no further than the fact that Petitioners' principal prayer for relief is that the Universal Service Fund (USF) contribution factor be set to zero. Petition for Review at 2.[2] Elimination of all funding from USF programs, even temporarily, would materially interfere with each Movants' core missions, which are, essentially, to expand connectivity and access to broadband. Motion at 2-5. And if the structure or operations of the Universal Service Administrative Company (USAC) were changed, see Petition for Review at 5, or if USAC were abolished, *id.,* whatever the FCC might do to replace those functions would unquestionably force Movants to incur substantial

---

[2]"The Commission should set the Fourth Quarter 2025 Contribution Factor at 0.000 or reduce the Factor by the amount accounted for by any unlawful portions." Comments and Objections of Consumers' Research, et al., Docket 96-45 (September 15, 2025) at 1, available at https://www.fcc.gov/ecfs/document/109151374503934/1

costs in adjusting to some new hypothetical regime. And dismissal of the petition for review would unquestionably redress all those harms. That Movants' petition for a writ of certiorari in *FCC v. Consumers Research*, 145 S.Ct. 2482 (2025), was granted, presumably after that Court's rigorous vetting process discussed infra, is also supportive of their standing.

Nor is it the case that, where intervention is in support of government respondents and a movant has demonstrated an interest in the case, that a full standing inquiry is even needed:

> "Article III does not require intervenors to independently possess standing" when a party already in the lawsuit has standing and seeks the same "ultimate relief" as the intervenor. *Ruiz v. Estelle*, 161 F.3d 814, 830 (5th Cir. 1998)

*Texas v. United States*, 945 F.3d 355, 377 (5th Cir. 2019), *rev'd on other grounds, California v. Texas*. 593 U.S. 659 (2021). *See also, Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)("Under our precedents, at least one party must demonstrate Article III standing for each claim for relief.")

### Even if Rule 24(a)(2) Standards Were Applicable, Movants' Easily Pass That Test for Intervention.

Petitioners fare no better in disputing Movants' alternative argument that, even if this Court were to import Rule 24(a)(2) considerations into Hobbs Act interventions, Movants easily pass the "minimal" bar to such intervention. *Sierra*

*Club v. Espy*, 18 F.3d 1202, 1207)(5th Cir. 1994).³ The motion is timely, and Movants have shown that they are "interested parties," and, notwithstanding Judge Wilson's prior finding, the governmental parties do not adequately represent Movants' interests. Motion at 12-14.⁴

Judge Wilson's brief determination with respect to Movants' intervention in No. 22-60525 was based on his finding that they had failed to show "'adversity of interest, the representative's collusion with the opposing party or nonfeasance by the representative.'" Order at 2 (quoting *Texas* at 553). "Collusion" and "nonfeasance" are not at issue here. As to "adversity of interest." Movants have made a much more robust showing based in part on the changed circumstance of the additional issues raised in the current proceeding that were not presented in No. 22-6025, and thus were not before Judge Wilson at the time of his order. Cite.

It is not daunting to show inadequacy of representation. *Sierra Club*, *supra*. :"Rule 24 is to be liberally construed." *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). And Movants need not demonstrate that "representation by existing parties will be, for certain, inadequate." " *Texas v. United States*, 805 F.3d 653, 661 (5ᵗʰ Cir. 2015)(quoting *Trbovich v. United Mine Workers of America*, 404 U.S.

---

³"The applicant need only show that representation 'may be' inadequate." *Id.*

⁴To the extent there might be concern about muliplicity of parties, Movants expect to collaborate on briefing with other Intervenors if possible.

528, 538 n.10 (1972)). As set out the Motion at 14, Movants' interests "complement, but are different from, the interests of the government Respondents," which would be met by preserving the status quo as to USF services, whereas Movants seek to fund additional new USF services. And, as Movants also explained, at 15, "Movants have a powerful interest in maintaining the current structure of USAC and its governance...," while the Respondents' could respond to an adverse decision by handing USF management to a different body.

Petitioners trivialize the significance of the grant of certiorari and permitting divided argument in *FCC v. Consumers Research*. Opposition at 6. It is certainly true that, as Petitioners say, "[d]ecisions about oral argument time are not determinative of inadequate representation." *Id.* But it is unquestionably indicative of a finding that, at the least, the parties sharing time have different things to say, since Supreme Court Rule 28.4 expressly states that "Divided argument is disfavored." Moreover, the Supreme Court not only rejected Petitioners' request to hold Movants' petition for a writ of certiorari, but it then granted the petition received full merits briefing. Motion at 11.

In treating the decisions to grant certiorari and to permit divided argument as having little or no significance, Petitioners also ignore that such actions are quite deliberate; the Supreme Court does not lightly grant certiorari. Indeed,

Movants' certiorari petition was granted only after it was relisted for a second conference. As the definitive supreme court practice treatise explains,

> [W]hen the Court is presented in conference with a certiorari petition that appears to raise a question warranting review, instead of taking formal action on the petition the Court often relists it for further consideration, typically at the next conference. In the interim the Justices and their law clerks study the case to ensure that it is an appropriate vehicle to resolve the certworthy question

Shapiro *et al.*, Supreme Court Practice, ch. 5, §5.2 (11th ed. 2019)(ebook).

## CONCLUSION

Accordingly, Benton, NDIA and MediaJustice respectfully request that the Court grant leave to intervene in support of Respondents FCC and the United States, and grant all such other relief as may be just and proper.

Respectfully submitted,

/s/ Andrew Jay Schwartzman

Andrew Jay Schwartzman
525 Ninth Street, NW
Seventh Floor
Washington, DC 20004
(202) 241-2408
AndySchwartzman@gmail.com

November 13, 2025

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with [the type-volume limit of FED. R. APP. P. 28(d)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f):

    **X**   this document contains **1744** words, **or**

    ☐   this brief uses a monospaced typeface and contains [*state the number of*] lines of text.

2. This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

    **X**   this document has been prepared in a proportionally spaced typeface using WordPerfect 2021 in 14 point Times Roman, or

    ☐   this document has been prepared in a monospaced typeface using ____ with ____.

                /s/ Andrew Jay Schwartzman

                Attorney for Benton Institute for Broadband & Society, National Digital Inclusion Alliance and Media Justice.

November 13, 2025

# CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of November, 2025, I electronically filed the foregoing *Reply to Opposition to Motion for Leave to Intervene* with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit using the Court's appellate CM/ECF system. I further certify that service was accomplished on all participants in the case via the Court's CM/ECF system.

Respectfully submitted,

/s/ Andrew Jay Schwartzman

Andrew Jay Schwartzman
525 Ninth Street, NW
Seventh Floor
Washington, DC 20004
(202) 241-2408
AndySchwartzman@gmail.com